**In re Trent Drew DANIELS, Debtor.**

**Henry W. GREEN, Trustee, Plaintiff,**

**v.**

**Trent Drew DANIELS and Clerk of the District Court of Johnson County, Defendants.**

**Bankruptcy No. 85–21321.
Adv. No. 85–0003.**

United States Bankruptcy Court,
D. Kansas,
at Kansas City.

Oct. 20, 1986.

Henry W. Green, P.A., Leavenworth, Kan., for trustee/plaintiff.

Glen W. Froelich, Overland Park, Kan., for debtor/defendant.

Trent Drew Daniels, Prairie Village, Kan., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came on for hearing on February 21, 1986, on the trustee's objection to the debtor's claim of a homestead exemption in proceeds from an involuntary transfer pursuant to a prior divorce decree. The hearing was combined with the trustee's complaint to turnover non-exempt property. The trustee, Henry W. Green, appeared on his own behalf. The debtor, Trent Drew Daniels, appeared in person and by his attorney, Glen W. Froelich. The Court took the matter under advisement and asked the parties to submit stipulations of fact and memorandum briefs.

## FINDINGS OF FACT

Based on the exhibits, the pleadings, the testimony, the stipulated facts, and the file herein, the Court finds as follows:

1. That this Court has jurisdiction over the parties and subject matter; and that venue is proper.

2. The debtor's former spouse, Nancy Daniels, filed for divorce from the debtor on March 1, 1985, in the Johnson County District Court. The Court heard the divorce action on October 18, 1985.

3. On November 7, 1985, the Johnson County District Court entered a journal entry and divorce decree. Under the journal entry and divorce decree, the court ordered that the residence of Nancy Schwent Daniels be set aside to the petitioner (Nancy).

4. The Johnson County District Court further ordered that the residence was Nancy Daniels' sole and separate property, free and clear of any right, title or interest in Trent Daniels, subject to the first and second mortgages thereon. However, the court decreed that the residence be subject to a $6,000 lien in favor of Trent Daniels. The lien was not forecloseable until April 15, 1986. In the event the residence was not sold by that date, Trent Daniels could foreclose.

5. The Johnson County District Court granted Nancy Daniels sole and exclusive possession of the residence as of November 15, 1985, and ordered Trent Daniels to vacate by that date.

6. Trent Daniels resided in the house from September 1979 to the weekend following November 15, 1985.

7. In order to satisfy the lien, Nancy Daniels refinanced the home and deposited

$6,000 with the Clerk of the Johnson County District Court.

8. On December 9, 1985, Trent Daniels filed a petition for Chapter 7 relief under Title 11 of the United States Code. The debtor claimed the $6,000 as exempt.

9. On January 10, 1986, the trustee filed an objection to the debtor's claim of exemption, and filed a complaint to turnover the $6,000 as non-exempt property. The debtor answered the objection and complaint on February 18, 1986.

10. This Court heard the matter on February 21, 1986. At the hearing, the debtor testified that he intended to use the $6,000 to " ... buy another house" (trial transcript pg. 8).

## ISSUE OF LAW

UNDER KAN.STAT.ANN. § 60–2301, DOES AN INVOLUNTARY TRANSFER OF A DEBTOR'S HOMESTEAD PURSUANT TO A DIVORCE DECREE TERMINATE THE HOMESTEAD STATUS OF THE PROCEEDS OF THE TRANSFER THE DEBTOR RECEIVED UNDER THE DECREE?

## CONCLUSIONS OF LAW

Although nonexistent at common law, the homestead right has found widespread acceptance in state constitutional and statutory provisions. The purpose of homestead provisions is to protect the family unit by providing each family a home secure from non-excepted creditors. *Farlin v. Sook*, 26 Kan. 347 (1881). The Kansas Homestead derives its legal protection from article 15, section 9 of the Kansas Constitution. The Kansas Legislature, based upon the constitutional language, provided for a statutory exemption in Kan. Stat.Ann. § 60–2301. The statute states:

A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, or a mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, when that relation exists.

Trent Daniels' residence prior to November 15, 1985, certainly constituted his homestead pursuant to section 60–2301. The issue is whether the proceeds from the involuntary transfer pursuant to divorce decree are exempt under the statute. This Court finds that the proceeds are exempt.

Although the statute is silent as to proceeds from any transfer, the statute is liberally construed in favor of the homestead. *Howell v. Jewett & Co. v. McCrie*, 36 Kan. 636, 14 P. 257 (1887). Public policy favors a liberal interpretation of the provisions consistent with the legislature's "social and economic purposes." *State, ex rel., Apt v. Mitchell*, 194 Kan 463, 399 P.2d 556 (1965).

The spirit of the homestead laws is demonstrated by the Kansas Supreme Court's treatment of proceeds from the voluntary sale of the homestead. In *Smith v. Gore*, 23 Kan. 488, 490 (1880), the court created an "equitable fiction" to protect the proceeds from the voluntary sale of a homestead. *See also, International Harvester Credit Corp. v. Ross*, 217 Kan. 683, 538 P.2d 655 (1975). The rule is that if the debtor intended to purchase another homestead with the proceeds from the voluntary sale, the proceeds are exempt.

The issue before this Court is whether that same equitable treatment should be accorded to proceeds from an involuntary sale. Research of other Kansas cases and cases from other jurisdictions reveals that the treatment is the same. If the debtor intended to use the proceeds from the in-

voluntary transfer to purchase another homestead, the proceeds are exempt under the homestead laws.

First, if one traces the history of the "equitable fiction" of *Smith v. Gore, supra* back far enough, one finds the Kansas Supreme Court initially exempted proceeds from an involuntary transfer. In *Mitchell v. Milhoan*, 11 Kan. 617 (1873), the court exempted surplus funds from a foreclosure of a purchase money mortgage because the judgment debtor intended to use the funds in redeeming the homestead or in purchasing another homestead. The later case of *Smith v. Gore, supra*, was an extension of the initial equitable fiction for involuntary transfer proceeds.

In addition, most jurisdictions exempt proceeds from an involuntary transfer. For example, the case of *In re Klein*, 5 B.C.D. 697 (W.D.Mich.1978) is on point. In *Klein*, divorce proceedings were pending at the time the debtor filed bankruptcy. The divorce court awarded the bankrupt $2,500 of the proceeds and his wife received the balance. The debtor claimed the proceeds as exempt; the District Court agreed, and stated:

> [I]n Michigan proceeds from the sale of tenancy by the entirety and homestead property have the same exempt status as the realty if the proceeds are invested in other similar property within a reasonable period. (citations omitted)
>
> \* \* \* \* \* \*
>
> The only homestead the bankrupt had any interest in was the marital home. To deny his claim for a homestead exemption to his share of the proceeds would be unfair, and, in my opinion, contrary to the policy of the Bankruptcy Act to give him a "fresh start." If the divorce had not been entered until after six months of the date of filing of the bankruptcy petition, the trustee would not have any claim to the proceeds. Likewise, if the funds had been received and invested prior to bankruptcy in a home, the bankrupt would have been entitled to a homestead exemption. He intended to use the funds to purchase a new home

for himself and his daughter. I therefore hold that the proceeds are subject to the bankrupt's claim of a homestead exemption.

*Id.* at 699.

■ The Court agrees with the *Klein* analysis and holds that, under K.S.A. § 60–2301, an involuntary transfer of a debtor's homestead pursuant to a divorce decree does not terminate the homestead status of the proceeds if the debtor intended to use the proceeds to purchase another homestead. As such, the only remaining question is whether Trent Daniels intended to invest the $6,000 in another homestead.

■ The uncontradicted testimony at the February 21, 1986 hearing indicates that Trent Daniels intended to invest in another homestead. Glen Froelich called Daniels to testify. The testimony was as follows:

Q. Did you intend that to be your homestead?

A. I did.

Q. Have you claimed another homestead since then?

A. I have not.

Q. Did you want to get the house out of the divorce?

A. I did.

Q. What were your plans with regard to the house if you didn't get the $6,000 by April 15th of '86?

A. To foreclose and take the property back.

Q. What are your plans now when you get the $6,000?

A. To invest in another, buy another house.

Q. Is that going to be hard to do in your condition?

A. Very difficult.

Q. Could you do it without the $6,000.

A. No, I could not.

Q. What kind of deal are you looking for?

A. I don't understand.

Q. Do you think you can get financing at this point?

Q. No way, I would have to assume something.

A. No way, I would have to assume something.

Q. But you think $6,000 is enough to do something modest?

A. I hope so.

(Trial transcript, pgs. 8–9).

The trustee did not call any witness to contradict Daniels. This Court finds that Daniels intended to use the $6,000 to invest in another homestead.

IT IS THEREFORE, BY THE COURT, CONSIDERED AND ORDERED That judgment be for the debtor/defendant, Trent Drew Daniels, and against the trustee, Henry W. Green.

IT IS FURTHER, BY THE COURT, ORDERED That the Clerk of the District Court of Johnson County, Kansas, is hereby directed to turnover the funds being held to Trent Drew Daniels forthwith.