.CARRIE EMMERT v. ALEXANDER SCHMIDT.

No. 12,598.   ( 68 Pac. 1072.)

SYLLABUS BY THE COURT.

HOMESTEAD AND EXEMPTIONS—*Fraternal Insurance.*   Chapter 163, Laws of 1895 (Gen. Stat. 1901, § 3463), construed, and held to exempt to the persons named in beneficiary certificates issued by fraternal orders the proceeds thereof, while deposited in bank, from the process of garnishment by a creditor of a beneficiary to enforce payment of his judgment.

Error from Marshall district court; W. S. GLASS, judge.   Opinion filed May 10, 1902.   Reversed.

*Loomis, Blair & Scandrett,* and *Brock & Smith,* for plaintiff in error.

*Theo. H. Polack, J. A. Broughten,* and *Garver & Larimer,* for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.: On the 8th day of February, 1899, defendant in error procured a personal judgment against plaintiff in error and her husband, George A. Emmert, in the sum of $1407 and for costs, and a decree of foreclosure of a mortgage given to secure payment of the debt.   On the 18th day of March

thereafter George A. Emmert died. At the date of
his death he was a member of the Marysville lodge of
Ancient Order of United Workmen, and held a benefi-
ciary certificate for $2000 payable to his wife. He
was also a member of the Marysville camp of Modern
Woodmen of America, and held a beneficiary certifi-
cate for $1000, payable to his wife. At this time the
mortgaged property had not been sold under the de-
cree. On the 15th day of April plaintiff in error re-
ceived a draft of $2000 from the Ancient Order of
United Workmen in payment of its certificate, and
on April 17 received a draft from the Modern Wood-
men of America in the sum of $1000 in payment
of its certificate. These drafts were by plaintiff in
error indorsed and delivered to the First National
Bank of Marysville, and the proceeds deposited to her
credit in open account. On May 15 defendant in er-
ror brought this action against plaintiff in error on
the decree and judgment theretofore rendered in the
foreclosure action. He also caused garnishment pro-
ceedings to be instituted and garnished the proceeds
of the beneficiary certificates remaining in the hands
of the bank at that time, in amount, $2650. The bank
answered according to the facts. The defendant an-
swered, and also moved the court to discharge the
garnishment upon the ground that the money held by
the bank was exempt to her. This motion was by the
court overruled. The mortgaged property was sold
under the decree for the sum of $800. Thereafter,
a supplemental petition was filed in this action and
a judgment for the remainder of the personal judg-
ment, and costs in the foreclosure action, and costs in
the garnishment action, in amount $995, was awarded
to plaintiff, and the garnishee was ordered to and
did pay this amount into court for the benefit of

Emmert v. Schmidt.

plaintiff to be .applied in satisfaction of such judgment. The remainder of the fund in the hands of the garnishee, upon motion of defendant, was released from garnishment process. The defendant brings error.

A motion has been made by defendant in error to dismiss this proceeding on the ground that the garnishee is a necessary party in this court, and for the further reason that plaintiff in error, by applying to the court below for the release of the funds in the hands of the garnishee in excess of the judgment of plaintiff and costs of both actions, accepted a benefit under the judgment and acquiesced therein. We do not agree with this contention. The fund garnished was the property of the defendant. How it can be contended that, after plaintiff had secured payment into court out of this fund for his benefit the full amount of his demand and all costs to the last cent, defendant, by procuring the remainder of her money which plaintiff did not demand and to which he had no color of right, accepted benefits under the judgment, or acquiesced therein, we are at a loss to understand. How the garnishee, after performance of the order commanding payment into court, as demanded by plaintiff, of that portion of the fund claimed by him, and the release of the remainder of the fund to defendant from the process of the court, can be prejudiced by any disposition this court may make of the case, is not apparent. The motion to dismiss is therefore overruled.

We find it necessary to consider and determine but one of the many questions discussed by counsel in their brief and argument. This question is important and goes to the very vitals of the controversy. It is this: Was the fund in the hands of the bank,

the proceeds of the beneficiary certificates, subject to seizure by the process of garnishment to satisfy the judgment against plaintiff in error ?   Chapter 163, Laws of 1895 (Gen. Stat. 1901, § 3463), provides as follows :

"SECTION 1.  In case any life insurance company, fraternal order or beneficiary society shall have issued or shall hereafter issue any policy or policies of insurance or beneficiary certificate upon the life of an individual and payable at the death of the assured, or in any given number of years, to any person or persons having an insurable interest in the life of the assured, all such policies and their reserves of the present value thereof shall inure to the sole and separate use and benefit of the beneficiaries named therein, and shall be free from the claims of the assured, and shall also be free from the claims of the person or persons affecting such insurance, their creditors and representatives, and shall be free from all taxes and the claims and judgments of the creditors and representatives of the person or persons named in said policy or policies of insurance."

The title to this act reads : "An act to exempt from legal process to beneficiaries the proceeds of life-insurance policies and beneficiary certificates."  That this act is inartistic in form, inaccurate in language, and imperfect as a model of legislative exactness, will readily be conceded.  The question, however, is whether the act, aided by the language employed in the title, contains a sufficient expression of legislative will to indicate the intent of that body to exempt to the beneficiary the fund in question.  We are of the opinion that it does.  That the fund in the bank was the remaining portion of the proceeds of the beneficiary certificates, in which defendant was named as beneficiary, was conceded at the trial and found by the court.  That the title to the act clearly shows the

intent of the legislature to exempt such proceeds to the beneficiary, free from seizure by legal process, is clear. The body of the act, after providing that all such policies and their reserves of the present value, as enumerated in the act, "shall inure to the sole and separate use and benefit of the beneficiaries named therein," proceeds to enumerate and classify the exemptions created. By this classification, it is seen that life policies and beneficiary certificates, and their proceeds, are exempt: (1) From all claims against the person whose life is insured; (2) from all claims which the person or persons effecting the insurance and the creditors and representatives of such person or persons may make against the policy or its proceeds; (3) from taxation; (4) from all claims and judgments of creditors and representatives of the person or persons named in the policy. While this fourth classification is not clear, yet we conceive, from an examination of the language of the whole act and the title thereto, that the legislature intended the policy or beneficiary certificate, or the proceeds therefrom, to be exempt to the person named in the policy or certificate as beneficiary from all legal process issued for the collection of any claim or judgment of any creditor or representative of the beneficiary in the policy.

By the language, "and shall be free from the claims and judgments of the creditors and representatives of the person or persons named in said policy or policies of insurance," reference is had to the person or persons named in the policy *as beneficiaries*, and not to the person named in the policy as the insured. Two reasons may be given for this determination. First, the plural, *persons*, is used, which can apply to beneficiaries, and, in the very nature of things, cannot apply

to the assured, the assured in a policy always being but one person, and the beneficiaries in the policy often being more than one. Again, the statute had already created an exemption from all claims of creditors and representatives of the assured and the person or persons effecting the insurance, whether the assured or another. Hence, to give this portion of the act any effect, it must apply to the exemption granted the beneficiary named in the policy.

In this interpretation we are.aided by former decisions of this court. In *Mitchell v. The State*, 61 Kan. 779, 60 Pac. 1055, Mr. Justice Smith said:

" The legislative intent is made clearly manifest by the title of the act above set out. We cannot ignore the language of the title, which in this case furnishes the light by which we may read the purpose of the legislature."

In *Landrum v. Flannigan*, 60 Kan. 436, 56 Pac. 753, this court held:

"If necessary to give effect to the evident intent of a legislative enactment, its language may be completed by reading into it such inadvertently omitted words as may be requisite to express its obvious sense."

In the opinion, Mr. Chief Justice Doster said:

"If the words be of doubtful meaning; if they be inartistically arranged; if the syntax be violative of the rules of composition; if ellipsis, tautology or redundancy occur, the statute must be examined in other lights than those afforded by the mere words employed, and chief among these lights are those afforded by the evident purpose and intent of the legislature and the entire context of the statute.

"Another important rule is that all parts of the act must, if possible, be given a meaning and be allowed to stand."

In arriving at this conclusion, we also take into con-

Emmert v. Schmidt.

sideration the prior decisions of this court, placing a liberal construction on statutes creating exemptions, to uphold the exemption. (*Mallory v. Berry*, 16 Kan. 293.)

Counsel for defendant in error direct our attention to the case of *Reighart v. Harris*, 6 Kan. App. 339, 51 Pac. 788. We have examined this decision. It is squarely in point and directly opposed to the construction here placed upon this act. We are unwilling, however, to yield our assent to the doctrine there announced. Its authority is therefore denied.

Our attention is also called to the case of *Cranz v. White*, 27 Kan. 319, 41 Am. Rep. 408. That case arose upon the construction of a federal statute, and the act is held to protect pension money due, or to become due, only until it has reached the hands of the pensioner, and not to protect the proceeds deposited in bank, as was the fund in this case. The federal act, however, is different from the one we are here construing, and that decision is not in conflict with the views herein expressed.

It follows that the judgment must be reversed and case remanded for further proceedings in conformity to this opinion.

SMITH, CUNNINGHAM, GREENE, JJ., concurring.